IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES ex rel.<br>EDDIE ALEXANDER,<br><br>    Petitioner,<br><br>vs.<br><br>STATE OF ILLINOIS, et al.<br><br>    Respondent | Case No. 06-198-MJR-DGW |

**REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner Eddie Alexander's Petition for a Writ of Habeas Corpus (Docs. 9, 9-2). This matter has been referred to Magistrate Judge Donald G. Wilkerson by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation. For the reasons set forth below, it is **RECOMMENDED** that the Petition be **DENIED, that the matter be DISMISSED,** and that the Court adopt the following findings of fact and conclusion of law.

**FINDINGS OF FACT**

When Antonio Ray tried to steal money from a gang called the "Gangster Disciples" on the evening of January 19, 2006, he likely had no idea that night would be his last. *See* Doc. 10-7 at p. 3. He was caught stealing in Eddie Alexander's (Alexander) home, and Alexander, along with several others, beat Ray incessantly until he was covered with blood and unable to defend himself (Doc. 10-7, p. 4). Once the beatings stopped, some members of the Gangster Disciples threw Ray into the trunk of a car and followed Alexander's instructions to drive Ray from Alexander's home in Alton, Illinois, to Missouri, where they were supposed to kill him. *Id.* Instead of an outright assassination, they decided to leave Ray helpless on a busy highway in St.

1

Charles, Missouri, where Ray died after being struck by at least one vehicle. *Id.* Following a jury trial in 2001, Alexander was found guilty of aggravated battery and first degree murder for the death of Antonio Ray. *Id.* at p. 5. The Illinois trial court sentenced him to 40 years in prison. *Id.*

Alexander appealed his first degree murder conviction to the Illinois Court of Appeals, where he made two arguments.[1] He claimed the Illinois trial court lacked jurisdiction to prosecute him for murder because the murder occurred in Missouri, and that his counsel provided ineffective assistance (Doc. 10-7, p. 2). To support his claim that the trial court lacked jurisdiction to convict him, Alexander made the following assertions: (a) "the indictment was fatally defective in that it failed to allege that the murder occurred even partly within the State of Illinois"; (b) "the State failed to prove beyond a reasonable doubt that a part of the crime occurred in Illinois"; (c) and "the jury was not instructed that in order to convict the defendant, it had to find that at least a part of the crime occurred in Illinois" (*Doc*. 10-11, p. 5; Doc. 10-7, p. 5). To support his ineffective assistance of counsel claim, he contended his attorney (a) failed to challenge Illinois' jurisdiction over the murder charge, (b) failed to object to a police officer's testimony that the murder occurred in Madison County, (c) failed to adequately confront two of the State's witnesses with the full extent of the benefits they received pursuant to plea agreements, and (d) failed to object to two hearsay statements that were admitted. Doc. 10-7, p. 9-12 (emphasis added).

The Court of Appeals rejected both Alexander's jurisdiction and ineffective assistance of counsel arguments and upheld his murder conviction. With respect to Alexander's claim that the indictment was fatally defective because it failed to show that the murder occurred in Illinois, the

---

[1] Alexander successfully appealed his conviction for aggravated battery to the Illinois Court of Appeals; therefore, his petition for habeas corpus relief pertains only to his conviction for murder.

court found that the indictment "on its face, raised no genuine jurisdictional issue." *Doc.* 10-7, p. 5. The court stated:

> The indictment charges, in relevant part, as follows: "Eddie L. Alexander, on or about January 19-20, 1996, *at and in the County of Madison, in the State of Illinois,* committed the offense of: Count I – First[-] Degree Murder in that said defendant, without lawful justification, and with the intent to do great bodily harm to Antonio Ray, beat Antonio Ray, *and then* left Antonio Ray upon Highway 367, St. Charles, Missouri, where he would be struck by vehicles, thereby causing the death of Antonio Ray, in violation of 720 ILCS 5/9-1(a)(1) [(West 1994)]. (emphasis in original).

Doc. 10-11, p. 6; Doc. 10-7, p. 5. Thus, the court determined that the indictment was consistent with Illinois law because "the acts constituting the murder – with the exception of leaving Ray on the Missouri highway – occurred in Madison County, Illinois." *Id.*

Alexander's second contention challenging Illinois' jurisdiction is "the State failed to prove beyond a reasonable doubt that the acts perpetrated in Illinois caused Ray's death" also failed. The court acknowledged that, as Alexander maintained, the Illinois Supreme Court, in *People v. Holt*, 440 N.E.2d 102, 108 (1982) held that "jurisdiction must be proven beyond a reasonable doubt"; but stated that, unlike in the facts in *Holt*, the facts in Alexander's case supported Illinois jurisdiction. By examining Illinois statutes, the court noted:

> A defendant is subject to prosecution in Illinois for a criminal offense if it is "committed either wholly or partly within the [s]tate" (720 ILCS 5/1-5(a)(1) (West 2002)) or if conduct within this state "constitutes an attempt, solicitation[,] or conspiracy" to commit an offense in another state that is a criminal offense in both states (720 ILCS 5/1-5(a)(4) (West 2002)). An offense is committed partly in Illinois if either the conduct or a result that constitutes an element of the offense occurs within Illinois. 720 ILCS 5/1-5(b) (West 2002). In this case, Ray's death, which was a result constituting an element of the offense of first-degree murder (see 720 ILCS 5/9-1(a)(1) (West 1994)), occurred in Missouri. The issue, then, is whether the beating, which occurred in Illinois, constituted an element of the offense as well. To sustain a conviction for first-degree murder, the State must show (1) that a defendant performed acts which caused the death of the victim and (2) that the defendant intended to cause death or great bodily harm or knew that his or her actions would cause death or created a strong probability of death or

3

> great bodily harm. 720 ILCS 5/9-1(a)(1), (a)(2) (West 1994). At issue here is whether the defendant's actions in Illinois caused Antonio Ray's death.
>
> The defendant acknowledges, as he must, that in order for the State to prove jurisdiction, the State need not establish that Ray's death was caused *entirely* by actions occurring in Illinois. *See* 720 ILCS 5/1-5(a)(1) (West 2002) (Illinois has jurisdiction over a crime that occurred "wholly or partly within the [s]tate"); *Holt*, 91 Ill. 2d at 485, 440 N.E.2d at 104 (noting that "[j]urisdiction would be proper even if less than all the criminal activity took place in Illinois, *provided enough did to constitute a criminal attempt*" (emphasis added) (citing *People v. Werblow*, 241 N.Y. 55, 148 N.E. 786 (1925))). He argues, however, that the beating inflicted in Illinois did not constitute a part of the crime because the State did not prove that it caused Ray's death. We reject this contention.

Doc. 10-7, p. 6. The Illinois court of appeals then rejected Alexander's final jurisdictional argument - that the jury instructions should have required the jury to find that he committed, at a minimum, part of the crime in Illinois, before returning a guilty verdict. Based on its prior analysis, the court found that his argument was without merit. "As we have explained, in order to convict the defendant, the jury needed to find that he solicited murder in Illinois or that the act of beating Ray in Illinois formed a part of the murder. Because the jury necessarily found beyond a reasonable doubt at least one of the facts required to support Illinois jurisdiction, the result would have been no different had the instruction been given. *Id.* at p. 8.

Alexander's ineffective assistance of counsel arguments met the same fate as his jurisdictional challenges. As noted above, Alexander contended that his attorney (a) failed to challenge Illinois' jurisdiction over the murder charge, (b) failed to object to a police officer's testimony that the murder occurred in Madison County, (c) failed to adequately confront two of his co-defendants with the full extent of the benefits they received pursuant to plea agreements, and (d) failed to object to two hearsay statements that were admitted: the testimony of a witness (Shanieka Mitchell) who initially testified that she *personally* heard Alexander give the order to kill Ray but then changed her testimony to say that a 13 year old actually overhead the statement; and, a medical examiner's stipulation that stated that "Ray died of crania-cerebral trauma . . . the

4

cause of death *is stated* as blunt trauma at the hands of another . . ." *See* Doc. 10-7, p. 9-12 (emphasis in original).

The court first found that Alexander's trial counsel's decision to forego challenging Illinois' jurisdiction and to not object to the officer's testimony about where the murder occurred did not rise to ineffective assistance of counsel. *Id.* at p. 9. Given that Illinois had jurisdiction, the court held that raising those claims would have been pointless. *Id.* The court similarly rejected Alexander's contention that his counsel was ineffective for failing to confront two of the State's witnesses about their plea agreements because there was no evidence that any testimony about their agreements would have aided Alexander's case. *Id.* at p. 11. Last, the court determined that Alexander's claim that his counsel was ineffective for failing to object to certain hearsay statements did not warrant reversal because his counsel's failure to object did not prejudice Alexander's case. *Id.* at pp. 11-12.

After he failed to convince the Illinois court of appeals to vacate his murder conviction, Alexander filed a petition for rehearing with the Illinois Court of Appeals. That petition was denied, and Alexander, represented by counsel, subsequently filed a timely Petition for Leave to Appeal (PLA) with the Illinois Supreme Court (Doc. 10-10, p. 1). His PLA contained one argument, namely, that he "did not receive a fair trial on the question of jurisdiction where that issue was never presented to the jury, even though the decedent was alive in Illinois, and died in Missouri." *Id.* However, in this single argument concerning the jury instructions, Alexander also repeated his contention that he made to the Illinois court of appeals challenging the sufficiency of the indictment. Alexander did not raise any argument that his counsel was ineffective in his PLA. The Illinois Supreme Court denied Alexander's PLA (Doc. 10-12).

Alexander now makes the following arguments in support for his petition for habeas corpus relief: (1) Illinois lacked jurisdiction to prosecute him for murder; (2) the indictment was

substantially amended; (3) he was denied his constitutional rights to due process and trial fairness because of defective jury instructions; (4) his 40 year sentence violates the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington,* 542 U.S. 296 (2004); and (5) he received ineffective assistance from his trial counsel because his counsel (a) failed to appreciate that he could not be found guilty for a murder that occurred exclusively in Missouri; (b) was unaware of the presumption that death occurs where the body was found; (c) did not object to the charge (indictment) when it failed to allege how any portion of the murder occurred in Illinois; (d) did not have the jury instructed that some portion of the murder had to occur in Illinois for Alexander to be found guilty in Illinois; (e) did not object to hearsay statements made by a medical examiner in a stipulation about the cause of death; (f) did not object to the hearsay statement of Shaneika Mitchell who, initially testified that she personally heard Petitioner order the gang members to kill Ray, but on cross-examination admitted that she head someone else say that they heard Alexander give such an order; and (g) did not object to the "false" testimony of a detective who stated that Ray was killed in Madison County, Illinois.

As discussed more fully below, this Court **RECOMMENDS** that Alexander's petition **BE DISMISSED** because (1) his claims concerning Illinois jurisdiction are not cognizable in this habeas proceeding (Claims 1 and 3); and (2) he procedurally defaulted his remaining claims (Claims 2, 4, and 5).

## CONCLUSIONS OF LAW

### A. Petitioner's Arguments Contending Illinois Lacked Jurisdiction to Prosecute Him for Ray's Murder (Claims 1 and 3) Are Not Cognizable In a Federal Habeas Corpus Proceeding

Petitioner makes a two-fold challenge to the Illinois circuit court's jurisdiction over his murder conviction. *See Doc. 9-2, Claims 1 and 3*. He first argues that the indictment failed to

establish jurisdiction because it was inconsistent with his understanding of Illinois law that "presumes that a death is caused in the place where the body is found (i.e. Missouri)[2]" (Doc. 9-2). Respondent contends Petitioner is not entitled to federal habeas corpus relief because he procedurally defaulted this claim, and, it is not a claim that is cognizable in a habeas proceeding. The Court need not reach the issue of whether Petitioner procedurally defaulted this claim because federal habeas relief is inappropriate here for two reasons: (1) Alexander's argument concerning the indictment is an issue of state law and (2) federal courts do not review the sufficiency of an indictment in a habeas corpus proceeding. *See Davis v. VanNatta,* 438 F.3d 707, 711 (7th Cir. 2006) (it is not necessary for a court to reach the issue of whether a petitioner procedurally defaulted his claim when it is clear that the petition fails on its merits); *see Biskup v. McCauhgtry,* 20 F.3d 245, 247 (7th Cir. 1994) (noting "it is elementary that federal question jurisdiction under §2254 cannot be invoked to review . . . alleged violations of state law."); *see Cramer v. Fahner*, 683 F.2d 1376, 1381 (7th Cir. 1982) (noting the Supreme Court has consistently prohibited federal courts from reviewing the sufficiency of an indictment in a federal habeas corpus proceeding).

28 U.S.C. §2254 provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceeding unless the adjudication of the claim - . . . resulted in a decision that was contrary to, or involved in an unreasonable application of, clearly established federal law, as determined by the supreme court of the united states; . . . or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(d)(2). Therefore, federal habeas relief "is available to a state prisoner only on the ground that he is in custody in violation of the *Constitution or laws of the United*

---

[2] Alexander relies on *People v. Holt,* 440 N.E.2d 102 (Ill. 1982) for this contention.

*States."* McGowan v. Miller, 109 F.3d 1168, 1172 (7th Cir. 1997) (emphasis added); 28 U.S.C. §2254(a) (emphasis added). A federal court's scope in a habeas corpus action is accordingly "limited to a determination of whether any federal constitutional rights have been violated. If the answer to this query be in the negative, the district court can only dismiss the petition." *United States v. Ragen*, 247 F2d 638, 639(7th Cir. 1957). Federal courts are additionally "bound by the state court's interpretation of state law." *Lechner v. Frank,* 341 F.3d 635, 642 (7th Cir. 2003). Therefore, "even if [a] Illinois court is wrong . . . it is not our role on habeas corpus to set aside a state court's interpretation of its own law." *Cramer v. Fahner,* 683 F.2d 1376, 1381 (7th Cir. 1982); *Ragen*, 247 F2d at 640 (noting a "state ruling that is erroneous as a matter of law does not by itself signify any constitutional deprivation."); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law.")

Alexander claims that the indictment was inconsistent with the Illinois Supreme Court holding in *People v. Holt,* 440 N.E.2d 102, 107-08 (1982) (finding that Illinois jurisdiction to prosecute murder was not established when the victim's body was found in Wisconsin and noting "jurisdictionally significant" happened in Illinois). In addition, the Illinois Court of Appeals decided the question of whether the indictment established jurisdiction by determining whether it complied with Illinois statutes: The court stated:

> The indictment charges, in relevant part, as follows: Eddie L. Alexander, on or about January 19-20, 1996, *at and in the County of Madison, in the State of Illinois,* committed the offense of: Count I – First Degree Murder in that said defendant, without lawful justification, and with the intent to do great bodily harm to Antonio Ray, beat Antonio Ray, *and then* left Antonio Ray upon Highway 367, St. Charles, Missouri, where he would be struck by vehicles, thereby causing the death of Antonio Ray, in violation of 720 ILCS 5/9-1(a)(1) [(West 1994)]. [Therefore] all the actions constituting the offense of murder took place in Illinois.

Doc. 10-11, p. 6; Doc. 10-7, p. 5 (emphasis in original). The court of appeals therefore decided that the indictment supported Illinois' jurisdiction over Petitioner's case by making sure that it

was consistent with the Illinois statutes. *Id;* 720 ILCS 5/9-1 (a)(1) (first degree murder statute); *see also* 720 ILCS 5/1-5(b) ("an offense is committed partly within this State, if either the conduct which is an element of the offense, or the result which is such an element, occurs within the State.) Therefore, this Court concludes that Petitioner's claim that Illinois lacked jurisdiction to prosecute him for murder due to the language in the indictment involves state, rather than federal law, and is therefore not appropriate for federal habeas review. *Biskup,* 20 F.3d at 247 ("whether [state] courts correctly applied their own law is, by itself, no concern of ours. Federal habeas actions do not lie for mere errors of state laws."); *Diggs v. Hulick,* 2009 WL 103177, *2 (N.D. Ill. Jan. 14, 2009) ("when the highest state court to address a petitioner's claims on the merits" examines and rejects that claim on state law, and when a petitioner "devotes most of his arguments to Illinois authorities[,]" it is clear that federal habeas relief is inappropriate.)

Alexander's claim concerning his indictment also fails for another reason: the sufficiency of an indictment cannot be reviewed in a habeas corpus proceeding. *Knewel v. Egan*, 268 U.S. 442, 446 (1925); *Cramer v. Fahner*, 683 F.2d 1376, 1381 (7th Cir. 1982); *Robertson v. Hanks*, 140 F.3d 707, 711 (7th Cir. 1998). "Relief should only be granted where the indictment is "so fatally defective that under no circumstances could a valid conviction result from facts provable under the indictment." *Cramer*, 683 F.2d at 1381-82 (noting that federal habeas review of a state court indictment will not occur unless a petitioner was "den[ied] due process abridging a specific guarantee, such as the right to notice of the charges against him, which is violated by a constitutionally vague indictment."). *See also, Robertson v. Hanks,* 140 F.3d 707, 711 (7th Cir. 1998) (holding that unless an indictment "alter[s] the theory of the case or the identity of the offense . . . or prejudice [the petitioner's] ability to prepare a defense, any error in the charging document is harmless and is not cognizable in a federal habeas proceeding).

In this case the Court does not conclude that the indictment deprived Alexander of due process. The indictment stated that Petitioner "committed the offense of [f]irst degree murder." It also set out the elements of the crime and contained the citation for the Illinois first degree murder statute. Illinois requires an indictment to "(1) apprise the defendant with reasonable certainty of the nature of the offense in order to allow him to prepare a defense; (2) include the elements of the offense; and (3) sufficiently identify the particular offense committed so as to protect defendant from double jeopardy." *Cramer*, 683 F.2d at 1382; *and see People v. Alexander,* 442 N.E.2d 887, 890 (Ill. 1982) ("an indictment or information must apprise the defendant of the precise offense charged with sufficient specificity to enable him to prepare his defense . . ."). Consequently, the Court finds that Alexander was not denied due process, and his claim for habeas relief based on his indictment fails. *See Bae v. Peters,* 950 F.2d 469, 477 (7th Cir. 1991) ("[s]o long as the defendant has received adequate notice of the charges against him so that he has had a fair opportunity to defend himself, the constitutional requirement is met."); *Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998).

Alexander further contends he is entitled to federal habeas corpus relief because the trial court did not provide the jury with any instructions that required them to find that Illinois had jurisdiction to convict him (Doc. 9-2, pp. 10-11).[3] He claims the jury instructions were "deficient" and consequently denied him his constitutional rights to due process and trial fairness. He specifically asserts the jury instructions should have stated:

> (1) there was a presumption that death occurred where the body was found ([i.e. in Missouri]); (2) the State was obligated to rebut a presumption that Ray's death occurred in Missouri; (3) the murder had to be committed partly within this State for Illinois to have jurisdiction; (4) a vicious assault was insufficient to sustain a murder conviction; and (5) some part of a course of a course of criminal conduct was insufficient to sustain a murder conviction.

*Doc.* 9-2, p. 11. Alexander did not raise all of these points with the Illinois Court of Appeals. However, the Court will decide this claim on the merits because they all essentially echo Alexander's primary argument that Illinois did not have jurisdiction over his case because Ray's body was found in Missouri, and the jury should have been instructed to find jurisdiction. As previously noted, the Illinois court of appeals found that such instruction was unnecessary because, in order to convict Alexander of first degree murder, the jury had to, and did "find beyond a reasonable doubt" that either Alexander ordered his fellow gang member to murder Ray while they were in Alexander's home or that the heinous beating contributed to Ray's death (Doc. 10-7). *See* 720 ILCS 5/1-5(a)(1) (West 2002) and 720 ILCS 5/1-5(a)(4) (West 2002) ("A defendant is subject to prosecution in Illinois for a criminal offense if it is 'committed either wholly or partly within the [s]tate' or if conduct within this state 'constitutes an attempt, solicitation[,] or conspiracy' to commit an offense in another state that is a criminal offense in both states). This Court finds that Alexander's arguments and the Illinois Court of Appeals' decision involve matters of Illinois state law. Consequently, similar to the indictment, this claim is not cognizable.

A petitioner's objection to a jury instruction that is based on state law does not entitle him to federal habeas review. *Engle v. Issac,* 456 U.S. 107, 119-121, n.21 (1982); *Humbles v. Buss,* 2008 WL 586420, **5-6 (7th Cir. Feb. 12, 2008) (denying a petitioner's habeas petition when his claim that the jury instructions involved a matter of state law). In such an instance, the only question a federal court asks is whether the instruction "so infected the entire trial that the resulting conviction violated due process." *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991). *Humbles,* 2008 WL 586420 at **5-6 (federal courts "do not re-examine state court determinations on state-law questions when the issue does not arise to the level of a violation of due process.")

In this case, the Illinois court of appeals found that the absence of a jury instruction requiring them to find that the crime occurred partly in Illinois was harmless since, under Illinois law, the jury could not have returned a guilty verdict if they did not first find the Alexander committed some act "constituting a crime" in Illinois (Doc. 10-7, p. 8); 720 ILCS 5/1-5(a)(1); 720 ILCS 5/1-5(a)(4). In fact, the jury heard testimony that Alexander severely beat Ray in and outside of Alexander's home in Illinois, and also heard testimony that, after the beating, Ray was placed in the trunk of a car located on Alexander's property, and Alexander was one of the individuals who ordered his house guests to murder Ray (Doc. 10-7, p.8). This Court therefore concludes that, even in the absence of a jury instruction establishing Illinois jurisdiction, Alexander's trial was not so fundamentally unfair that it deprived him of due process. *See Estelle,* 502 U.S. at 71-72 (noting the "Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly.") Alexander's claim for habeas relief based on the jury instruction therefore fails.

### B. Alexander Procedurally Defaulted His Remaining Three Claims (Claims 2, 4, 5)

Alexander next urges the Court to grant him federal habeas relief on the grounds that his indictment was substantially amended (Claim 2); his forty year sentence violates the principles of *Apprendi v. New Jersey* and its progeny, 530 U.S. 466 (2000) (Claim 4); and his counsel was ineffective (Claim 5). Respondent contends Alexander procedurally defaulted all three of these claims; therefore, federal habeas relief is inappropriate. The Court agrees with Respondent.

"Before a state habeas petitioner is allowed to pursue his claims in federal court, he must exhaust his remedies in the state courts." 28 U.S.C. §2254; *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). In order to exhaust state remedies "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-46, 119

S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (citations omitted). "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest,* 474 F.3d at 930. "If a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted." *Id; Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005).

"A petitioner can overcome a procedurally defaulted claim nonetheless if he can demonstrate 'cause' [and prejudice] for his failure to exhaust, or, if he can show fundamental miscarriage of justice. To demonstrate "cause" for failure to exhaust, [the petitioner] must demonstrate that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' " *Guest v. McCann*, 474 F.3d at 930 (quoting *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Objective factors constituting sufficient "cause" in a procedural default analysis include (1) "interference by officials that makes compliance with the State's procedural rule impractical"; (2) "a showing that the factual or legal basis for a claim was not reasonably available to counsel"; and (3) constitutionally ineffective assistance of counsel. *McCleskey,* 499 U.S. at 493. "Once the petitioner establishes cause [for his procedural default], he must then show actual prejudice resulting from the errors of which he complains." *Id.*

In this case, Alexander procedurally defaulted his remaining claims (2, 4, 5) because he failed to raise any of them in his PLA to the Illinois Supreme Court. In addition, he raised only four of his ineffective assistance of counsel claims with the state appellate court, and did not give that court the opportunity to hear his argument concerning an amended indictment or *Apprendi.* Alexander admits to his default; however, he seeks to overcome it by contending that the reason he procedurally defaulted was due to the fault of his attorneys (Doc. 11). *Wrinkles v. Buss,* 537

F.3d 804, 812 (7th Cir. 2008) (noting "attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default." The Court will therefore determine, for each of these claims, whether Alexander has established cause by determining whether his counsel provided him with *constitutionally ineffective assistance of counsel* within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed 24 674 (1984):

> An assessment of the performance of either appellate or trial counsel is based on the well-established standard set forth in *Strickland* . . . [t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. This standard is met only when it is established that counsel's performance was so deficient that it can be said that counsel was not functioning as the counsel guaranteed to the criminal defendant by the Sixth Amendment.

*Schaff v. Snyder,* 190 F.3d 513, 526 (7th Cir. 1999). Accordingly, Alexander's argument that his counsel's ineffective assistance establishes "cause" for his procedurally defaulted claims must first demonstrate Alexander had a right to effective counsel in the proceeding from which the claim was omitted; and absent his counsel's unreasonable performance, the result of the proceeding would likely have been different. *Strickland,* 466 U.S. at 688; *Anderson v. Cowan,* 227 F.3d 893, 901 (7th Cir. 2000).

### *Claim 2: Alexander's indictment was substantially amended*

Alexander contends his counsel provided ineffective assistance by not raising an argument that his indictment was substantially amended during his appeals. He argues that his indictment was "constructively amended" because the evidence at trial showed that an "accidental homicide" in "which he was not involved" instead of first degree murder.

The record before the Court shows that the State of Illinois amended the indictments of other defendants who were involved in the crimes against Ray; however, it did not amend Alexander's indictment. Respondent maintains that Alexander's "constructive amendment"

14

argument is essentially Alexander's way of stating the evidence shown at trial was inconsistent with the indictment. As the Court discussed above, this argument is baseless. The jury heard evidence that Alexander was not only involved in Ray's murder but orchestrated it as well. His counsel therefore did not provide Alexander with ineffective assistance within the meaning of *Strickland* by not raising this unfounded claim.

*Claim 4: Alexander's 40 year sentence violated Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny*

Alexander' claim that his forty year sentence violated *Apprendi v. New Jersey,* 530 U.S. 466 (2000) is also unfounded. Alexander maintains that the maximum sentence he should have received was fourteen years because the evidence did not support a first degree murder conviction, but rather showed that he either was a "solicitor" or took place in a "conspiracy" against Ray. But *Apprendi* involved a defendant who received a greater sentence than the *crime for which he was charged allowed.* Unlike Alexander, the defendant there did not seek a decreased sentence because he thought he should have been charged with a different crime. Consequently, this claim is without merit, and his counsel who handled his appeal was not ineffective for not raising it.

*Claim 5: Alexander's counsel provided ineffective assistance*

Finally, Alexander maintains his counsel, who did not raise any ineffective assistance of counsel claims in his PLA to the Illinois Supreme Court, provided ineffective assistance that constituted "cause" to overcome his procedural default. Again, in his petition for federal habeas corpus relief, Alexander argues that his trial counsel (a) failed to appreciate that he could not be found guilty for a murder that occurred exclusively in Missouri; (b) was unaware of the presumption that death occurs where the body was found; (c) did not object to the charge failing to allege how any portion of the murder occurred in Illinois; (d) did not have the jury instructed

15

that some portion of the murder had to occur in Illinois for Alexander to be found guilty in Illinois; (e) did not object to hearsay statements made by a medical examiner in a stipulation about the cause of death; (f) did not object to the hearsay statement of Shaneika Mitchell who, initially testified that she personally heard Petitioner order the gang members to kill Ray, but on cross-examination admitted that she head someone else say that they heard Alexander give such an order; and (g) did not object to the "false" testimony of a detective who stated that Ray was killed in Madison County, Illinois.

Some of these claims were raised in Alexander's direct appeal to the Illinois court of appeals but were nevertheless procedurally defaulted when Alexander filed his PLA to the Illinois Supreme Court without raising these claims. *Guest,* 474 F.3d at 930; *and see Anderson,* 227 F.3d at 900 ("to preserve a claim for habeas review, [the petitioner] needed to present it to the Supreme Court of Illinois in his petition for discretionary review.") But Alexander's attorney's decision not to raise these claim in Alexander's PLA cannot be "cause" that overcomes this default because Alexander was not entitled to a constitutional right to counsel during the Illinois Supreme Court's discretionary review. *Buelow v. Dickey*, 847 F.2d 420, 426 (7th Cir. 1988); *see also Alexander,* 227 F.3d at 900 (holding in instances "in which a petitioner does not have a constitutional right to counsel, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")

Since Alexander failed to meet his burden of establishing "cause" to overcome his procedural default, the Court will not make a determination concerning any "prejudice" Alexander claims he has suffered. Accordingly, the Court cannot find that Alexander's counsel provided ineffective assistance within the meaning of *Strickland* .

The Court's last discussion concerns whether Alexander can show that a failure to grant him relief would "work a fundamental miscarriage of justice" that will excuse his procedural default. "A fundamental miscarriage of justice occurs when "a *constitutional* violation has probably resulted in the conviction of one who is actually innocent." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (emphasis added) (quoting *Moore v. Casperson*, 345 F.3d 474, 484 (7th Cir. 2003). The record before the Court simply does not support such a finding.

**CONCLUSION**

For the reasons discussed above, the Court **RECOMMENDS** that the Court **DENY** Alexander's petition for federal habeas corpus relief because his claims that Illinois lacked jurisdiction to prosecute him for Ray's Murder are not cognizable in a federal habeas corpus proceeding (Claims 1 and 3) and Alexander procedurally defaulted his claims that the indictment was substantially amended, his sentence violated *Apprendi v. New Jersey,* and his counsel provided ineffective assistance (Claims 2, 4, 5).

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 10, 2009**

        s/ *Donald G. Wilkerson*
        **DONALD G. WILKERSON**
        **United States Magistrate Judge**